JOHN H. KING, appellee *vs.* TIMOTHY FOLLETT, executor of the CHITTENDEN, will of GIDEON KING, appellant.

CHITTENDEN,
January,
1831.

A sale or gift of stock in a steam boat company conveys the right to all dividends made after such sale or gift takes effect, whether earned before or not.

This was an appeal from a decree of the court of probate for the district of Chittenden. *Gideon King,* by his will, not only appointed *Follett* his executor, but gave him a legacy ; and after sundry legacies, bequeathed the residue of his estate to *John H. King,* and his brother, William King. *Follett* proceeded to settle the estate, and on a day appointed, with regular previous notice, presented his account for settlement, and gave no credit to the estate for what he himself claimed as legatee of the earnings of stock in the Lake Champlain Steam Boat Company. The said *John H. King,* filed his petition before the court of probate, setting forth, that the earnings of the steam boats, after the last dividend, made in the lifetime of said *Gideon,* and before his decease, amounted to such a sum, that his share of the same, as residuary legatee, amounted to the sum of eight hundred dollars ; and prayed that *Follett,* as executor, might be decreed to pay him said sum. The appellee so established these facts, that the court of probate decreed accordingly, notwithstanding *Follett's* claim to retain the same as special legatee. The legacy to *Follett* was as follows, to wit : " I give and bequeath unto *Timothy Follett,* of said Burlington, one hundred and sixty shares of stock, being all my interest in the Lake Champlain Steam Boat Company, be the same more or less ; provided, nevertheless, that said *Follett* shall regularly pay, once in each year, to *John H. King* the sum of three hundred dollars, and to William King the sum of three hundred dollars, to be paid annually as long as the dividends on my said stock shall amount to the said sum so to be paid as aforesaid, and no longer." *Follett* appealed to this Court from the said decree against him.

*I. P. Richardson, for the appellee,* contended, 1. That *Follett* was not, by virtue of the 4th clause of the will of *Gideon King,* a special or general legatee of the will, but a trustee of *John H. King,* and, also, that, if *Follett* had neglected to pay over to *King,* as expressed in the proviso to said clause, the office of trustee was at an end.

2. That if *Follett* should be considered by the Court as a residuary legatee of said will, the legacies under the will are all subject

YY

CHITTENDEN to the claims against said estate in proportion to their respective
*January*
*1831.*  amounts.

King        3. That the dividends of said stock, and all other personal es-
*vs.*   tate, ought to have been sold and applied in payment of the debts
Follett.  of the estate, before the sale of the real estate, which the execu-
tor neglected to do.

4. That if the stock was an unconditional legacy or bequest,
still the dividends, which had accrued before the death of the
testator, belongs to the estate, and not to *Follett* as legatee.
—*Preston on legacies,* 190.   Legacy of money due on mort-
gage carries debt, not the interest.

5. That a construction, that said stock and the dividends be-
longed to *Follett* from the time of the death of the testator, as
long as the dividends, should amount to $600,00 *per annum,* and
no longer, would be inequitable and unjust; as it would be in the
power of the executor so to diminish its value, as wholly to de-
feat the claims of the other legatees.

6. This will, having been written by the executor and one who
claims under it, must be construed strongly against him.

7. The general rule is, that a bequest of so much stock is a
general legacy, unless there is some special ground for constru-
ing it specific.—*Roberts on wills,* 373.

8. The 4th clause shows a condition, which the executor must
show a compliance with, or he can claim nothing under it.—*Pres-*
*ton on legacies,* 193.

*C. Adams, for the appellant.*—1. The claim, made by the
plaintiff, was not properly made before the probate court, and
therefore the decree ought to be reversed.

2. That, by the will of *Gideon King,* the whole interest of
said *King* in his steam boat stock was devised to the defendant.

3. That, on the death of said *King,* the defendant became the
sole owner of said stock.

4. That dividends are parcel of the stock, growing out of it, and
must necessarily be paid to those who own the stock at the time
of the dividend.

5. The intention of *King,* that the whole should pass, is evi-
dent from the provision annexed to the legacy, that *Follett* should
pay out of the dividends $300 a year to each of the sons.

*Mr. Bailey,* on the same side, contended, that this was a spe-
cific legacy, and cited *Preston on legacies,* 53, 54; 2 *Mad. Ch.* 7,

11 ; 2 *Bro. C. Rep.* 108 ; 4 *Ves.* 555, 568 ; 7 *Johns. C. Rep.* 258 ; 1 *Atk.* 417.

That a specific legacy vests immediately on the death of the testator.—*Barrington* vs. *Kistam*, 6 *Ves.* 345 ; *Prest. on Leg.* 54 ; 4 *Ves.* 748 ;—and that the value of a special legacy is to be calculated at the death of the testator.—*Prest. on Leg.* 534, 160 ; 5 *Ves.* 205.

That it was the intention of the testator, by the clause in his will, to bequeath to *Follett* all his interest in the Lake Champlain Steam Boat Company, and that he had described in express terms the benefit which he designed to secure to J. H. & W. King out of this portion of his property ; that the stock carried with it whatever was incident or appurtenant to it.—*Philips* vs. *Chamberlain*, 4 *Ves. Jun.* 51 ; *Rob. on wills*, 375, 190, 396 ; *Ray* vs. *Lawn*, 1 *Bro. Ch. Rep.* 76 ; *Page* vs. *Leapingwell*, 18 *Ves.* 463 ; *Kent's Com.* 375 ; *Rockingham* vs. *Penrice*, 1 *P. Will.* 177 ; *Williams* vs. *Williams*, 2 *Bro. Ch. Rep.* 87 ; *Gallimi* vs. *Noble*, 3 *Merr.* 691 ; 1 *P. Wms.* 598 ; *Morley* vs. *Bird*, 3 *Ves.* 628 ; *Paris* vs. *Paris*, 10 *Ves.* 185 ; 2 *Bro. Rep.* 54 ; *Bandy* vs. *Wainwright*, 14 *Ves.* 66 ; *Witts* vs. *Steere*, 13 *Ves.* 363 ; *Watson* vs. *Watson*, 7 *Johns. C. Rep.* 258.

*Mr. Allen, for the appellee,* replied.

HUTCHINSON, C. J., delivered the opinion of the Court.—The decision, of which the appellant complains, affected the general balance of his account, and his appeal brings up the whole account ; and the decree of this Court fixes the balance, and it must be certified to the probate Court, that he may be governed by it in all future proceedings. But the parties are disposed to litigate nothing except the $800 decreed against the appellant. And here it should be distinctly noted, that the claim of the appellee is not connected with the three hundred dollars a year to be paid until a certain event, named in the will of *Gideon King*, should happen. For any claim of that kind the appellee must apply in another way ; either commence an action for such three hundred dollars, or claim in chancery a forfeiture of the legacy, on the ground that nonpayment of the three hundred dollars would work a forfeiture ; for the executor, as such, only accounts before the court of probate for the estate as it was at the decease of the testator, adding such rents, interests and profits as accrued during the settlement of the estate.

CHITTENDEN,
January,
1831.

King
vs.
Follett.

The foundation of this claim is, that the earnings of this steam boat stock, which might have composed a dividend at the decease of the testator, had the company seen fit then to have struck a dividend, should be considered as personal estate of the deceased, belonging, after the debts,&c., are paid, to the residuary legatees : or, in other words, the appellee contends, that the appellant can have nothing in his legacy of the steam boat stock, but what he would have been entitled to receive, if a dividend had been struck and paid immediately before the decease of the testator. This forms the question to be decided.

The clause in the will, giving to *Follett* 160 shares in said steam boat stock, adds, being all his interest in the same stock, be the same more or less. Now it is contended by the appellant, that this expression of interest, *&c.*, has reference to,or may comprise, any property connected with this stock, aside from these shares; and includes the very money now in dispute. But we think this expression was inserted to avoid any possible mistake in the number of shares. He supposed his shares to be 160 ; but what number he had he bequeathed to said *Follett*. This is the true construction of that part of the will.

In deciding this question, we are led to consider the nature of this property, and ascertain what a purchaser, or donee, is entitled to by his conveyance. A conveyance of stock, such as steam boat stock, canal stock, bridge stock, and the like, conveys the right of receiving the dividends of the income of such stock, and of conveying the same right to others ; and this necessarily includes a liability to pay assessments for out-goes in repairs, agencies, &c. ; for whenever a dividend is struck, the expenditures are first deducted from the incomes, and the net balance only is divided. And every person, purchasing such stock, purchases upon the risk of outstanding debts against the company ; for these have a lien upon the stock, in whose hands soever the title may be, and may secure themselves by requiring covenants against such pre-existing liens upon the stock. Suppose one or more of these boats, belonging to this company, had been consumed by fire, just before the decease of the testator, or exactly at his decease, or shortly afterwards ; in either case, it would have diminished the value of the stock, and its effect must have been felt in the next dividend; and the loss, with regard to the 160 shares, must have fallen upon *Follett*, the owner at the time of such dividend : because the dividend must have been proportionably less, by deducting this loss ; and this, whether the loss was before, at, or after

the decease of the testator. Furthermore, the loss, in either case, might have been so great, that, instead of a dividend, there must have been a heavy assessment upon each share to meet the expense of reinstating the boats for business. In such case *Follett* must have paid this assessment to prevent a sale of his shares to pay the same ; for such assessment would have been, like any other debts, a lien upon these shares. Should the company refuse to make a dividend, and should *Follett* apply to a court of chancery for a decree compelling a dividend, all he could expect would be a decree that a dividend should be made by some day certain, and be made upon the principles we have just delineated.

We may present another view. Suppose the testator had conveyed these 160 shares to *Follett*, by an absolute deed, the same day that his will took effect. Could he or his executor claim a dividend of the prior earnings of the boats? We think not. His conveyance discharged him from any further corporate risks for losses, and left *Follett* the only person who could receive and discharge the dividends made afterwards ; and left him the only person, who could enforce a dividend, should the company refuse to make one, when his interests required it. This is the very case before us. If *Gideon King's* conveyance would have given to *Follett* this sum of $800, now in dispute, his bequest, taking effect at the same period, must have a similar effect.

The result is, that the decree of the court of probate must be reversed, so far as relates to this sum of $800, but affirmed as to all the remainder of the account ; and this decree must be certified to the court of probate from whose decree the appeal was taken.

*Adams, Bailey & Marsh,* for the appellant.

*Richardson & Allen,* for the appellee.